IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DAREK McMAHON            *
                         *
        v.               *       Civil No. JFM-13-490
                         *
COUNTY COMMISSIONERS     *
OF KENT COUNTY, et al.   *
                         *
                      ******

## MEMORANDUM

Plaintiff Darek McMahon brings this suit for damages related to a physical and sexual assault allegedly perpetrated by other inmates while McMahon was incarcerated at the Kent County Detention Center in January 2010. He has named as defendants the five alleged perpetrators of the assault[1] as well as the County Commissioners of Kent County, the Kent County Sheriff's Office, the Kent County Detention Center, Warden Ronald Howell, Sergeant Thomas Hutchins, and Officer J. Crossley (the "official defendants"). The official defendants have moved to dismiss certain defendants from certain counts or, in the alternative, for summary judgment on those counts. The motion is fully briefed, and no hearing is necessary. *See* Local R. 105.6. For the reasons set forth below, the motion to dismiss will be granted.

## BACKGROUND

According to the complaint, McMahon was incarcerated at the Kent County Detention Center in late 2009 and early 2010.[2] During at least part of that time, he worked alongside other inmates, without supervision, as a member of the Male Work Release Unit. In November 2009, however, McMahon was removed from the Male Work Release Unit due to concerns about his safety.

---

[1] The alleged perpetrators of the assault will be referred to as the "inmate defendants," although it is not clear whether they remain incarcerated.
[2] McMahon's full term of incarceration is not apparent from the face of the complaint.

1

McMahon alleges that some of those concerns were attributable to defendant Charles Hawkins, another inmate on the Male Work Release Unit. Similar safety concerns apparently arose in December 2009.

Despite these concerns, McMahon allegedly was assigned to the Male Work Release Unit in January 2010. In the middle of that month, McMahon alleges that he was physically and sexually assaulted by defendants Charles Hawkins, Mallory Winstead Jr., Daniel Manley, Fred List III, and Robert Susi. The complaint alleges that McMahon was initially assaulted near the recreational area of the Male Work Release Unit before being carried to the Male Work Release Unit bathroom. In the bathroom, Hawkins allegedly inserted a foreign object into McMahon's anus. Neither the recreational area nor the bathroom was adequately supervised, according to McMahon, and the Male Work Release Unit's surveillance system did not function on the date of the assault. McMahon was taken to the Chester River Hospital, where a physical examination revealed anal and rectal trauma with multiple anal and perianal tears. McMahon allegedly has experienced numerous seizures as a result of the assault.

The detention center's records purportedly confirm that defendants Howell, Hutchins, and Crossley knew in November and December 2009 that McMahon "needed to be separated from the general population." (Compl. ¶ 29, ECF No. 2.) The complaint alleges that Warden Howell personally executed McMahon's reclassification records and was aware of the potential danger that McMahon faced. McMahon had previously warned Sergeant Hutchins, the immediate supervisor of the Male Work Release Unit on the date of the assault, that McMahon was in danger, yet Hutchins was "deliberately indifferent to the Plaintiff's health, safety, welfare, protection, care and secure confinement." (Compl. ¶ 37.)

The complaint, which McMahon originally filed in state court, includes four counts. In count one, McMahon seeks damages under 42 U.S.C. § 1983 for alleged violations of the constitutional rights guaranteed in the Eighth and Fourteenth Amendments to the United States Constitution. In count two, McMahon requests damages for alleged violations of Articles 24, 25, and 27 of the Maryland Declaration of Rights. Count three alleges assault and battery, and count four alleges intentional infliction of emotional distress.

The official defendants subsequently removed the case to this court[3] and, one week later, filed the pending motion to dismiss or, in the alternative, for summary judgment. The motion raises four arguments. First, the Kent County Detention Center argues that it must be dismissed from the action because it is not an entity capable of being sued. The Kent County Sheriff's Office also seeks to be dismissed from the case because it does not operate the Kent County Detention Center. Second, the County Commissioners of Kent County seek to be dismissed from count one because "[t]he Complaint is utterly devoid of any factual allegations of an unlawful or unconstitutional custom, pattern[,] or practice that proximately caused the incident at issue," (Mot. Dismiss at 5, ECF No. 6-1), as required by *Monell v. Department of Social Services*, 436 U.S. 658 (1978). Third, the County Commissioners of Kent County claim that governmental immunity shields them from tort liability under counts three and four. Finally, defendants Howell and Crossley argue that they are immune

---

[3] The inmate defendants did not consent to removal, as required by 28 U.S.C. § 1446(a). The official defendants maintain that the inmate defendants' consent was not necessary because the claims against the inmate defendants are separate and independent from the claims against the official defendants. If that is true, 28 U.S.C. § 1441(c) ordinarily would require this court to sever the claims against the inmate defendants and remand those claims to state court. *See Lanford v. Prince George's Cnty.*, 175 F. Supp. 2d 797, 803–04 (D. Md. 2001). But failure to obtain consent to removal is a procedural defect, and the court cannot remand an action *sua sponte* for defects in removal procedure. *Ellenburg v. Spartan Motors Chassis, Inc.*, 519 F.3d 192, 198–99 (4th Cir. 2008). Neither McMahon nor the inmate defendants have objected to removal on the basis that the official defendants failed to obtain consent, nor have they sought remand of the ostensibly separate and independent claims. Remand therefore is inappropriate.

from liability under counts two, three, and four because McMahon did not plausibly allege that they acted with actual malice.

## STANDARD

Defendants have moved to dismiss or, in the alternative, for summary judgment. A court deciding a motion to dismiss "may consider documents attached to the complaint, as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *Sec'y of State for Def. v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007) (internal citations omitted). The official defendants attached to their complaint two affidavits describing the relationship between Kent County, the Kent County Detention Center, and the Kent County Sheriff's Office. The court has no reason to question the authenticity or reliability of the affidavits, and the municipal structure described therein is integral to McMahon's claims against the various defendants. The court therefore may consider those documents without treating McMahon's motion as a motion for summary judgment.

"[T]he purpose of Rule 12(b)(6) is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (internal quotation marks and alterations omitted). When ruling on such a motion, the court must "accept the well-pled allegations of the complaint as true" and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and alterations omitted). The plaintiff's obligation thus is to set forth sufficiently the

"grounds of his entitlement to relief," offering "more than labels and conclusions." *Id.* (internal quotation marks and alterations omitted). It is not sufficient that the well-pled facts create "the mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Rather, to withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," meaning the court could draw "the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

**ANALYSIS**

**I.     Dismissal of County Agencies**

The Kent County Sheriff's Office and Kent County Detention Center must be dismissed from the case because they are not governmental entities capable of being sued. "County police departments are agents of the State and should not be viewed as separate legal entities." *Hines v. French*, 852 A.2d 1047, 1068 (Md. App. 2004); *see also Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 874 (4th Cir. 1989) ("The separate claim against the 'Office of Sheriff' was rightly dismissed on the basis that this 'office' is not a cognizable legal entity separate from the Sheriff in his official capacity and the county government of which this 'office' is simply an agency."). The Kent County Detention Center is an agency under the control of Kent County, moreover, and claims against the detention center are duplicative of claims against the County Commissioners of Kent County. (*See* Crofoot Decl. ¶¶ 3–4, ECF No. 6-3.) Both the Kent County Sheriff's Office and the Kent County Detention Center will be dismissed from the suit.

**II.    Pattern-or-Practice Liability**

The County Commissioners of Kent County contend that they cannot be liable under count one because McMahon has not alleged any facts indicating that his injuries were caused by a municipal policy or custom. A local government such as a county "may not be sued under § 1983 for

5

an injury inflicted solely by its employees or agents." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). "Section 1983 plaintiffs seeking to impose liability on a municipality must, therefore, adequately plead and prove the existence of an official policy or custom that is fairly attributable to the municipality and that proximately caused the deprivation of their rights." *Jordan v. Jackson*, 15 F.3d 333, 338 (4th Cir. 1994). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011).

*Monell* does not impose heightened pleading requirements above the basic "short and plain statement" requirement of Rule 8(a), *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993), but McMahon must adequately plead "the existence of an official policy or custom that is fairly attributable to the municipality and that proximately caused the deprivation of [his] rights," *Jordan*, 15 F.3d at 338. Policy or custom may be inferred from "continued inaction in the face of a known history of widespread constitutional deprivations on the part of [municipal] employees," *Milligan v. City of Newport News*, 743 F.2d 227, 229–30 (4th Cir. 1984), but "a municipal policy or custom giving rise to § 1983 liability will not be inferred merely from municipal inaction in the face of isolated constitutional deprivations by municipal employees," *id.* at 230.

McMahon has not alleged any municipal policy or custom that was the proximate cause of his injuries. According to the complaint, the Male Work Release Unit surveillance system was inoperable on the date of the assault, and McMahon and the five perpetrators were inadequately supervised. These allegations pertain specifically to the date of the assault, rather than a widespread custom or practice. Though the lack of supervision may have facilitated the assault, there is no allegation that the detention center disabled the surveillance system in connection with some official

6

policy, nor does McMahon allege the existence of a custom or policy not to supervise inmates assigned to the Male Work Release Unit. These isolated incidents cannot give rise to municipal liability under § 1983.

The allegations pertaining to Hutchins and Crossley also do not support municipal liability. McMahon alleges that, prior to the assault, he told Crossley that he was in danger, yet Crossley took no action and was "deliberately indifferent to the Plaintiff's health, safety, welfare, protection, care[,] and secure confinement." (Compl. ¶ 37.) He makes an identical allegation with respect to Hutchins. (Compl. ¶ 36.) But municipal liability under § 1983 cannot be predicated on principles of *respondeat superior* or vicarious liability. *Spell v. McDaniel*, 824 F.2d 1380, 1385 (4th Cir. 1987). McMahon does not allege that the officers' indifference was connected to some municipal custom or policy, and the officers' "deliberate indifference" to his health and safety therefore does not give rise to a cognizable claim under *Monell* and its progeny.[4]

McMahon's allegation concerning Howell's role in McMahon's continued assignment to the Male Work Release Unit is more troubling for the purposes of this motion, but it includes no allegation that Howell was acting pursuant to municipal custom or policy. Howell's role is more significant for purposes of § 1983 liability than the roles of Hutchins and Crossley because Howell, as warden, is a "municipal official authorized to make and implement municipal policy." *See id.* (stating that municipal policy may be found "in formal or informal *ad hoc* 'policy' choices or decisions of municipal officials authorized to make and implement municipal policy"). But even if

---

[4] In *City of Canton v. Harris*, 489 U.S. 378, 389–90 (1989), the Court stated that deliberate indifference "may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury." But in that case, the "deliberately indifferent" officials were the city policymakers themselves; they were not subordinates such as Hutchins and Crossley. The *ad hoc* decisions of municipal policymakers may constitute municipal policy or custom, *Spell*, 824 F.2d at 1385, but the same is not true of *ad hoc* decisions made by officials who lack policymaking authority. Hutchins and Crossley lacked policymaking authority, and their *ad hoc* decisions thus cannot give rise to municipal liability.

McMahon's complaint is read in the light most favorable to him, as it must be, the complaint alleges only that Howell approved McMahon's assignment to the Male Work Release Unit despite concerns about his safety. McMahon does not allege that Howell acted pursuant to some detention center policy or custom, nor does he allege other instances in which Howell made a similar decision. *Cf. Semple v. City of Moundsville*, 195 F.3d 708, 713 (4th Cir. 1999) ("[P]roof of a single incident of the unconstitutional activity charged is not sufficient to prove the existence of a municipal custom.").

In *Jordan v. Jackson*, the Fourth Circuit stated that a plaintiff need not "plead multiple instances of similar constitutional violations to support an allegation of municipal policy or custom." *Jordan*, 15 F.3d at 339. "There is no requirement that he detail the facts underlying his claims, or that he plead the multiple incidents of constitutional violations that may be necessary at later stages to establish the existence of an official policy or custom and causation." *Id.* In *Jordan*, however, the plaintiff had alleged "the existence of several municipal policies or customs." *Id.* at 340. McMahon, by contrast, never alleges the existence of any municipal policy. *Jordan* therefore stands for the proposition that a plaintiff who alleges the existence of a municipal policy or custom need not substantiate that allegation by pleading other specific incidents of similar constitutional violations. But where the plaintiff alleges neither the existence of a policy nor specific incidents of similar conduct, the complaint does not support a plausible and reasonable inference that municipal policy or custom caused the plaintiff's constitutional deprivations.[5] *See Flanagan v. Anne Arundel Cnty.*, 593 F. Supp. 2d 803, 810 (D. Md. 2009) ("Plaintiffs must plead a County policy or custom that proximately causes the harm. By failing to state any policy whatsoever, no causal inference may be

---

5  McMahon argues discovery is necessary to establish the existence of a pattern or practice. Yet discovery is a tool with which to substantiate the allegations in the complaint; it is not used to develop the factual allegations in the first instance. If McMahon does not plead the existence of a custom or policy, he is not entitled to discovery to ascertain whether such a policy existed.

drawn to support plaintiffs' claims." (internal citations omitted)). McMahon therefore has not alleged a plausible *Monell* claim.[6]

## III. Governmental Immunity for Counties

The County Commissioners also cannot be held liable for the torts alleged in counts three and four. "A local governmental entity is liable for its torts if the tortious conduct occurs while the entity is acting in a private or proprietary capacity, but, unless its immunity is legislatively waived, it is immune from liability for tortious conduct committed while the entity is acting in a governmental capacity." *DiPino v. Davis*, 729 A.2d 354, 369–70 (Md. 1999); *see also Buffington v. Baltimore Cnty.*, 913 F.2d 113, 125 (4th Cir. 1990). Maryland has legislatively waived governmental immunity in certain circumstances, but the scope of the waiver includes only torts against specific employees of local governmental entities, rather than against the entities themselves. Section 5-303(b)(1) of the Maryland Courts and Judicial Proceedings Article states that "a local government shall be liable for any judgment against its employee for damages resulting from tortious acts or omissions committed by the employee within the scope of employment with the local government." Md. Code Ann., Cts. & Jud. Proc. § 5-303(b)(1). This provision only requires municipal governments[7] to defend and indemnify their employees for tortious acts committed within the scope of employment; it does not

---

[6] Maryland, like the federal government, imposes liability on municipalities for widespread patterns or practices that cause constitutional injuries. *See Prince George's County v. Longtin*, 19 A.3d 859, 886–88 (Md. 2011). For the same reasons that McMahon's *Monell* claim fails, McMahon also cannot maintain a pattern-or-practice claim under the Maryland Declaration of Rights. But Maryland, unlike the United States, also imposes *respondeat superior* liability on local governmental entities "for civil damages resulting from State Constitutional violations committed by their agents and employees within the scope of the employment." *DiPino v. Davis*, 729 A.2d 354, 372 (Md. 1999). The County Commissioners do not seek to dismiss any claim predicated on *respondeat superior* liability; their motion to dismiss addresses only the pattern-or-practice liability discussed in *Longtin*. McMahon therefore will be barred from pursuing pattern-or-practice liability under count two but may continue to seek damages under a theory of *respondeat superior*.

[7] For purposes of governmental immunity, the term "municipal governments" encompasses both county and city governments. *See Livesay v. Baltimore Cnty.*, 862 A.2d 33, 39 (Md. 2004).

permit plaintiffs to sustain civil suits directly against the municipal government itself. *See Gray-Hopkins v. Prince George's Cnty.*, 309 F.3d 224, 232 (4th Cir. 2002); *Williams v. Prince George's Cnty.*, 685 A.2d 884, 896–98 (Md. App. 1996).

Because there has been no legislative waiver of governmental immunity with respect to suits against local governments, counties such as Kent County are immune from tort liability with respect to non-constitutional torts related to governmental activities.[8] *Rios v. Montgomery Cnty.*, 872 A.2d 1, 13 (Md. 2005). The torts alleged in counts three and four—assault, battery, and intentional infliction of emotional distress—are common-law torts and are not constitutional, and the torts relate to the operation of the Kent County Detention Center, which is unquestionably a governmental activity. *See Gray-Hopkins*, 309 F.3d at 234. The County Commissioners of Kent County therefore are shielded from liability for the torts alleged in counts three and four.

### IV. Actual Malice of Howell and Crossley

Finally, Howell and Crossley argue that they are statutorily immune from liability with respect to counts two, three, and four. Section 5-507(b)(1) of the Maryland Courts and Judicial Proceedings Article states:

> An official of a municipal corporation while acting in a discretionary capacity, without malice, and within the scope of the official's employment or authority shall be immune as an official or individual from any civil liability for the performance of the action.

---

[8] Although the defendants in this suit are the County Commissioners of Kent County, rather than the county itself, the commissioners have not been identified by name and thus are being sued in their official capacities. "Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.' As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) (quoting *Monell*, 436 U.S. at 690 n.55).

Md. Code Ann., Cts. & Jud. Proc. § 5-507(b)(1). Apparently McMahon does not dispute that Howell and Crossley were municipal officials acting in a discretionary capacity and within the scope of their employment. The parties disagree only with respect to the question of malice.

The term "malice" carries a different meaning in the context of public official immunity under § 1983 than it carries in the context of municipal official immunity under section 5-507. *Thacker v. City of Hyattsville*, 762 A.2d 172, 184 (Md. App. 2000). In the context of official immunity under Maryland law, malice is used in the sense of "actual malice" rather than "implied malice." *Shoemaker v. Smith*, 725 A.2d 549, 559 (Md. 1999). Thus, to pierce the shield of municipal official immunity, a plaintiff has the burden of pleading that the official was motivated by ill will or an improper motive. *See Thacker*, 762 A.2d at 189. "Malice can be established by proof that the officer intentionally performed an act without legal justification or excuse, but with an evil or rancorous motive influenced by hate, the purpose being to deliberately and willfully injure the plaintiff." *Id.* (internal quotation marks omitted).

McMahon alleges that Howell's and Crossley's actions "were without legal justification or excuse, but with an evil or rancorous motive influenced by hate, the purpose being to deliberately and willfully injure the Plaintiff." (Compl. ¶ 45.) Yet these bare and conclusory allegations find no support in the specific facts alleged in the complaint. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (stating that, on a motion to dismiss, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"). To be sure, "[a]ctual malice does not always need to be shown with specificity; it can be inferred." *Leese v. Baltimore Cnty.*, 497 A.2d 159, 179 (Md. App. 1985). But McMahon must plead facts that support an inference of malice. Even if the court draws all reasonable inferences in favor of McMahon, as it must at the incipiency of this litigation, the facts alleged in the complaint do not sustain an inference that Howell and Crossley

11

acted out of ill will or improper motive. At most, the complaint alleges that they acted with deliberate indifference. Such indifference, however, is not tantamount to actual malice. *See Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998) (describing "deliberate indifference" as something between negligence and malice). McMahon does not describe any course of dealings between himself and the detention center officials that might indicate any ill will on their part. He merely alleges that Howell and Crossley knew that he needed to be separated from the general population, that they previously removed him from the Male Work Release Unit due to concerns about his safety, and that they did not remove him from the Male Work Release Unit on the date of the alleged assault. One might reasonably infer from those allegations that Howell and Crossley acted negligently or with deliberate indifference, but the allegations do not support an inference of actual malice.

## CONCLUSION

For the reasons stated above, the motion to dismiss will be granted. The Kent County Detention Center and Kent County Sheriff's Office will be dismissed from the entire action. The County Commissioners of Kent County will be dismissed from counts one, three, and four. Howell and Crossley will be dismissed from counts two, three, and four.

| May 21, 2013 | /s/ |
|---|---|
| Date | J. Frederick Motz |
| | United States District Judge |